UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PORSCHIA STEELE,

      Plaintiff,    **No. 6:16-cv-06022-MAT**
               **DECISION AND ORDER**
   -vs-

ROCHESTER CITY POLICE DEPARTMENT,
CITY OF ROCHESTER, and ROCHESTER
ANIMAL SERVICES,

      Defendants.
_____

## I.   Introduction

Represented by counsel, Porschia Steele ("Steele") commenced this action against the named defendants, Rochester City Police Department ("RPD"), the City of Rochester ("the City"), and Rochester Animal Services ("RAS"), alleging Federal and State claims based on the shooting of her loose, unlicensed dog by an RPD officer. Defendants have filed a Motion to Dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II.  Factual Background and Procedural History

On July 8, 2014, RPD and RAS were called to 142 Malling Drive, in response to a complaint about an aggressive dog loose in the neighborhood. The dog, "Princess," was unlicensed and was owned by Plaintiff. During the attempt to capture Princess, an RPD police officer fatally shot her. Plaintiff, who was not in the vicinity of 142 Malling Drive at the time, alleges that her dog was "cornered and defenseless." Plaintiff attached to her Complaint the report filed by the responding RAS Animal Control Officer ("ACO"), which

describes the dog as having aggressively charged RPD Officer Jorge as the ACOs attempted to capture her. The report also states that Officer Jorge shot the dog in self-defense when the dog was only two feet from him.

Plaintiff initially commenced this action in New York State Supreme Court, Monroe County. Defendants filed a notice of removal to remove the matter to Federal court based on the causes of action alleged under 42 U.S.C. §§ 1981, 1983 and 1985. Defendants now have moved to dismiss the Complaint. Plaintiff has not submitted any papers in opposition to Defendant's Motion.[1] For the reasons discussed below, Defendants' Motion is granted and the Complaint is dismissed.

## III. Standard of Review

Under Rule 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "It has long been understood that a defendant may base such a motion on either or both of two grounds: (1) a challenge to the 'sufficiency of the pleading' under FED. R. CIV. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim." McNamee, 2008 WL 686796, at *2

---

[1]

The Eastern and Norther Districts of New York, for instance, have Local Rules of Civil Procedure which provide that the non-moving party's failure to file papers in opposition to motion "may be deemed sufficient cause for the denial of the motion or the granting of the motion by default." See, e.g., Berkowitz By Berkowitz v. New York City Bd. of Educ., 921 F. Supp. 963, 966 & n.2 (E.D.N.Y. 1996) (quoting E.D.N.Y. L.R. 3(b)); McNamee v. Schoharie Cty. Jail, No. 906-CV-1364 LEK/GHL, 2008 WL 686796, at *4 (N.D.N.Y. Mar. 10, 2008) (quoting N.D.N.Y. L.R. 7.1(b)(3) (similar). The Western District of New York does not have a similar rule in its Local Rules.

(footnotes and citations omitted). The Rule 8 pleading standard turns on the "plausibility" of an actionable claim. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007) ("The need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.'") (quotation omitted; alteration in original). For a plaintiff's complaint to state a claim, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming that "all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555-56 (citations omitted; alteration in original).

## IV. Discussion

### A.   Amenability of RAS and RPD to Suit

Defendants argue that the only appropriately named party in this action is the City, because both RPD and RAS were empowered and enacted by the Charter of the City of Rochester ("Ch. C. of Rochester"), and suing them is duplicative of suing the City.

"'In New York, agencies of a municipality are not suable entities' because '[u]nder New York law, departments that are merely administrative arms of a municipality have no separate legal identity apart from the municipality and therefore cannot be sued.'" Mulvihill v. N.Y., 956 F. Supp. 2d 425, 427 (W.D.N.Y. 2013) (quotation and citations omitted). Defendants cite in particular to

Ch. C. of Rochester, Article ("Art.") VIIIA (Police Department). As Defendants argue, Art. VIIIA of the City's Charter establishes the RPD. Therefore, all of Plaintiff's claims against the RPD must be dismissed. See, e.g., Pierce v. Chautauqua County, No. 06–CV–644, 2007 WL 2902954, at *3 (W.D.N.Y. Sept. 28, 2007) (finding that "since the Chautauqua County Sheriff's Department and DSS are merely administrative arms of Chautauqua County, the claims against them must be dismissed").

With regard to RAS, Defendants cite Ch. C. of Rochester, Art. VIIIA, § 8A-3.1 (Animal Control Center. Reserved). However, the section of the Charter cited in support of the establishment of RAS is noted to be "reserved," and the most recent legislative history indicates that it was repealed in 1981.[2] Therefore, the Court must look elsewhere for authority in support of Defendants' argument that RAS is not amenable to suit.

The website maintained by the City indicates that the RPD's Operations Bureau includes Animal Services, i.e., RAS.[3] The City's Municipal Code states that "[t]he City shall provide an animal shelter in which seized animals shall be maintained for periods of

---

[2]

See CH. C. OF ROCHESTER, Art. VIIIA, § 8A-3.1 (Animal Control Center. (Reserved)) L.L. No. 11-1974; L.L. No. 15-1974; L.L. No. 18-1975; L.L. No. 1-1979; repealed by § 2, L.L. No. 14-1981, available at http://ecode360.com/28971784 (last accessed Mar. 30, 2016)

[3]

http://www.cityofrochester.gov/police/ (last accessed Mar. 31, 2016).

time as provided by law." CODE C. OF ROCHESTER, § 30-32.[4] The City's website lists, under "Animal Services and Programs," the "Operation of the Animal Shelter."[5] The City's website notes that Animal Control Officers are dispatched via the City's Emergency Communications Department, and that they are authorized to enforce "NYS laws and City of Rochester ordinances related to animal control."[6] See also CODE C. OF ROCHESTER, § 30-36 (Enforcement) ("This chapter may be enforced by any Animal Control Officer or police officer of the City. Animal Control Officers shall enforce any law or ordinance controlling animals in the City.").[7] The foregoing sufficiently establishes that RAS, like RPD, is simply an agency of the City and not separately amenable to suit. Accordingly, all claims against RAS are dismissed. See, e.g., Pierce v. Chautauqua County, 2007 WL 2902954, at *3.

## B.   Abuse of Process

To state a claim for abuse of process under 42 U.SC. § 1983 ("Section 1983") and New York law occurs, a plaintiff must allege that defendants (1) employed regularly issued legal process to compel performance or forbearance of some act, (2) with the intent to do harm without excuse or justification, (3) in order to obtain

---

[4]

http://ecode360.com/8674311 (last accessed Mar. 30, 2016).

[5]      http://www.cityofrochester.gov/article.aspx?id=8589936052 (last accessed Mar. 31, 2016).

[6]      http://www.cityofrochester.gov/animalcontrol/ (last accessed Mar. 31, 2016).

[7]      http://ecode360.com/8674315 (last accessed Mar. 31, 2016).

a collateral objective beyond the legitimate ends of the process. Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994). The Complaint is devoid of allegations regarding any use by Defendants of regularly issued process against Plaintiff. Plaintiff's Complaint thus fails to state even a possible claim for abuse of process.

**C.      Intentional and "Unintentional" Infliction of Emotional Distress**

Plaintiff purports to assert claims for intentional and "unintentional" infliction of emotional distress due to the RPD officer's killing of her dog. The Court has construed Plaintiff's claim for "unintentional" infliction of emotional distress—which is not a recognized cause of action under New York State law—as a claim for "negligent" infliction of emotional distress.

In New York State, "a dog is personal property and damages may not be recovered for mental distress caused by its malicious [i.e., intentional] _or_ negligent destruction." Fowler v. Town of Ticonderoga, 131 A.D.2d 919, 921, 516 N.Y.S.2d 368 (3d Dept. 1987) (citations omitted; emphasis supplied); accord, e.g., Johnson v. City of N.Y., 20 Misc. 3d 1141(A), 2008 WL 4149819, at *2 (N.Y. Sup. Ct. 2008). Plaintiff's allegations of intentional and negligent infliction of emotional distress due to the shooting of her dog do not state cognizable claims. They are therefore dismissed.

**D.   Negligent Hiring, Retention, and Training**

"To maintain a claim against a municipal employer for the 'negligent hiring, training, and retention' of a tortfeasor under New York law, a plaintiff must show that the employee acted 'outside the scope of her employment.'" Velez v. City of N.Y., 730 F.3d 128, 136-37 (2d Cir. 2013) (quoting Gurevich v. City of N.Y., No. 06 Civ. 1646(GEL), 2008 WL 113775, at *6 (S.D.N.Y. Jan. 10, 2008) (internal quotation marks omitted in Velez) (collecting cases)). Here, Plaintiff specifically asserts that the RPD officer, acting *within* the scope of his employment, shot her dog. This claim accordingly fails. See id. at 137 ("Plaintiff conceded that the defendants were acting within the scope of their employment, thus judgment as a matter of law was warranted on the negligent training claim.").

**E.   Negligence**

Plaintiff alleges that the City was negligent in the performance of its policing and animal control duties. However, Plaintiff does not articulate the manner in which any City employees acted negligently.

Moreover, the allegations regarding Officer Jorge describe only intentional conduct. See Compl. ¶ 11 ("Police Officer Jorge carefully set up his position before discharging his firearm, steadying his hand on a city refuge container located the trash can in the driveway where he took his time and took careful aim at the docile animal, and then discharged his weapon several times killing

the poor defenseless animal."); id. ¶ 12 (characterizing Officer
Jorge's actions as an "assassinati[on]" of a "poor quivering
animal"). The Court agrees with Defendants that "[w]hen a plaintiff
asserts excessive force and assault claims which are premised upon
a defendant's allegedly intentional conduct, a negligence claim
with respect to the same conduct will not lie." Dineen ex rel.
Dineen v. Stramka, 228 F. Supp.2d 447, 454 (S.D.N.Y. 2002)
(citation omitted); see also Sylvester v. City of N.Y., 385
F. Supp. 2d 431, 439 (S.D.N.Y. 2005) ("While it is possible to have
a negligent shooting claim against a police officer, the summary
judgment record in the case establishes that the shooting was
intentional and not negligent. In view of that intentional conduct,
no reasonable juror could find that the conduct was negligent, and
. . . a claim for a negligent shooting cannot be sustained in this
case.") (internal citations omitted).

Plaintiff's claims for negligence against RAS fail as well.
The report filed by the responding ACO, which Plaintiff annexed to
her Complaint, indicates that ACOs from RAS were present and
attempting to capture the dog at the time of the shooting.
Plaintiff thus appears to be suggesting that RAS was negligent in
failing to protect her dog from being shot. In New York, however,
"an agency of government is not liable for the negligent
performance of a governmental function unless there existed 'a
special duty to the injured person, in contrast to a general duty
owed to the public.'" McLean v. City of N.Y., 12 N.Y.3d 194, 199

(2009) (quotation omitted). As Defendants argue, Plaintiff's allegations against RAS amount to nothing more than that the ACOs did not successfully carry out their general duty owed to the public to capture stray animals. Plaintiff does not, and cannot, allege that RAS or the ACOs employed by that agency owed her any special duty. Accordingly, her negligence claim based on the action or inaction of RAS fails.

**F.    42 U.S.C. § 1981**

To establish a claim under 42 U.S.C. § 1981 ("Section 1981"), a plaintiff must allege facts supporting the following elements: (1) the plaintiff is a member of a racial minority; (2) the defendant intended to discriminate on the basis of race; and (3) the defendant discriminated against the plaintiff in regard to one of Section 1981's enumerated activities. Brown v. City of Oneonta, 221 F.3d 329, 339 (2d Cir. 2000) (internal citations omitted). "Those enumerated activities include the rights to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property." Id. Plaintiff does not allege race-based

discrimination. Nor does she allege that she engaged, or sought to engage, in any of the activities protected by Section 1981. She has therefore failed to state a plausible claim for relief under that section.

G.    42 U.S.C. § 1985

A claim for conspiracy under 42 U.S.C. § 1985 ("Section 1985") requires that the defendants, motivated by racial animus, conspired to violate the plaintiff's Federal civil rights. E.g., Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999). Plaintiff's failure to allege any such animus is fatal to her Section 1985 claim. Moreover, as Defendants argue, there can be "no conspiracy if the conspiratorial conduct challenged is essentially a single act by a single corporation acting exclusively through its own directors, officers, and employees, each acting within the scope of his employment." Herrmann v. Moore, 576 F.2d 453, 459 (2d Cir. 1978) (citation omitted). The conduct alleged here falls squarely within the bounds of the intracorporate conspiracy doctrine, because Plaintiff complains of harm caused by the employees of two City agencies, RPD and RAS, acting solely within the scope of their employment. This is alternative basis for dismissing the Section 1985 claims.

H.    42 U.S.C. § 1983

Under Monell v. Department of Soc. Servs., 436 U.S. 658 (1978), "a local government may not be sued under [42 U.S.C.] § 1983 for an injury inflicted solely by its employees or agents." Id. at 694. Rather, the local government, as an entity, is only responsible under Section 1983 "when execution of [that] government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official

-10-

policy, inflicts the injury[.]" Id. Plaintiff does not allege that the fatal shooting of her dog by Officer Jorge was undertaken pursuant to the officer's execution of a City policy, practice, or custom. Moreover, as Defendants argue, the single incident detailed in the Complaint, which involved no employee responsible for policy-making, is insufficient to establish municipal liability based on a failure-to-train theory. See, e.g., Dwares v. City of N.Y., 985 F.2d 94, 100 (2d Cir. 1993) ("[T]he simple recitation that there was a failure to train municipal employees does not suffice to allege that a municipal custom or policy caused the plaintiff's injury. A single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy."). Plaintiff has failed to state a claim for Monell liability against the City, and her Section 1983 claim must be dismissed.

## IV.  Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss (Dkt #3) is granted, and the Complaint (Dkt #1) is dismissed. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

S/Michael A. Telesca

_____

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:    Rochester, New York
          April 1, 2016

-11-